UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

Johnny Shell,                                                    Case No. 5:10-cv-379

            Petitioner,

v.                                                    **MEMORANDUM AND ORDER**

Secretary, Department of
Corrections, and Florida
Attorney General,

            Respondents.

_____

      This matter is before the Court on a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. For the reasons that follow, the Petition is denied.

## BACKGROUND

      On January 26, 2006, a jury convicted Petitioner of two counts of first degree murder and one count of robbery with a firearm. The trial court sentenced Petitioner to life in prison on the first count of first-degree murder, a consecutive term of life in prison on the second count of first-degree murder, and a mandatory minimum of 25 years in prison on the third count of robbery with a firearm. Petitioner appealed his conviction and the Fifth District Court of Appeal affirmed per curiam on April 10, 2007. Shell v. State, 953 So. 2d 542 (Fla. Dist. Ct. App. 2007) (table).

      On July 23, 2008, Petitioner filed an amended motion for postconviction relief pursuant to Fla. R. Crim. P 3.850, alleging seven claims of ineffective assistance of counsel. The trial court summarily denied five of his seven allegations. On August 12,

2008, the trial court granted Petitioner an evidentiary hearing on grounds one and seven, but denied Petitioner's request for counsel. The evidentiary hearing was held on September 12, 2008. On September 25, 2008, the trial court issued a final order denying relief on all grounds. Petitioner timely appealed to the Marion County Circuit Court, which per curiam affirmed.

Petitioner then filed the instant Petition under 28 U.S.C. § 2254.[1] The Petition alleges that (1) Petitioner's trial counsel was ineffective for failing to call witnesses before moving for a judgment of acquittal, and his appellate counsel was ineffective for failing to raise on appeal the trial court's alleged error in denying Petitioner's motion for judgment of acquittal and sentencing him to life imprisonment, (2) the trial court erred in giving incomplete jury instructions, (3) Petitioner's appellate counsel was ineffective for failing to raise on appeal whether the trial court erred in failing to conduct a <u>Nelson</u> hearing when Petitioner moved to discharge his trial counsel, (4) Petitioner's trial counsel was ineffective for misadvising him about his right to testify, (5) trial counsel was ineffective for failing to object to juror misconduct; (6) trial counsel was ineffective for failing to introduce evidence of witness tampering, (7) trial counsel was ineffective for failure to object to prosecutorial misconduct, (8) trial counsel was ineffective in failing to object to an inaccurate and incomplete jury instruction, (9) trial counsel was ineffective for failing to preserve for appeal the jury instruction issue, (10) trial counsel was ineffective for failing to contact and use a witness who allegedly would have provided an

---

[1] The Petition was filed with this Court on August 10, 2010, but was dated December 21, 2009. The Court will use December 21, 2009, as the date of filing.

alibi for Petitioner, and (11) the trial court abused its discretion in denying Petitioner's request for counsel during the evidentiary hearing.

## DISCUSSION

### A.      Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") strictly limits a federal court's power to review habeas petitions brought by state court prisoners.  In particular, the AEDPA restricts the Court's review to state-court adjudications of the direct appeal or habeas petition that:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The habeas statute also requires that a petition submitted by a person in custody pursuant to a state conviction be filed in federal court within one year from the date the conviction became final, 28 U.S.C. § 2244(d), and that a habeas petitioner exhaust his available state court remedies prior to raising them in federal habeas petition, 28 U.S.C. § 254(b)(1)(A).  Generally, claims alleging a violation of state law are not subject to review in federal habeas proceedings.   Pulley v. Harris, 465 U.S. 37, 41 (1984); McCullough v. Singletary, 967 F.2d 530-36 (11th Cir. 1992).

**B.**     **Timeliness of Petition**

The State challenges the timeliness of the Petition, claiming that it was filed 422 days after Petitioner's conviction became final.  As noted, a federal habeas petition must be filed within one year, or 365 days, of the petitioner's conviction becoming final.  See 28 U.S.C. § 2241(d)(1) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."). This limitation period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.  Id. § 2241(d)(1)(A).  In Florida state courts, a judgment becomes final 90 days after the conclusion of direct review to reflect the time period within which a petitioner can seek a writ of certiorari with the United States Supreme Court or, if a petitioner actually files a writ of certiorari, when the United States Supreme Court addresses the claim on the merits or denies the writ.  Chavers v. Sec'y, 468 F.3d 1273, 1274-76 (11th Cir. 2006); Bond v. Moore, 309 F.3d 770, 773-74 (11th Cir. 2002).

Once the judgment is final and the statute of limitations begins to run, the limitations period may be tolled where a prisoner properly files an "application for State post-conviction or other collateral review with respect to the pertinent judgment or claim."  28 U.S.C. § 2244(d)(2).  The statute is also subject to equitable tolling where a petitioner shows "that he has been pursuing his rights diligently, and . . . that some extraordinary circumstance stood in his way and prevented timely filing."  Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (internal quotation marks omitted).

The State argues that the Petitioner's judgment of conviction became final on April 19, 2007.  But this date appears nowhere in the record.  Rather, the conviction became final on April 10, 2007, when the Fifth District Court of Appeals affirmed the conviction, and the mandate of that court issued on April 27, 2007.  Petitioner's conviction and sentence "became final by conclusion of direct review" 90 days after the date the court of appeals affirmed per curiam the judgment and sentence, that is, ninety days after April 10, 2007.  See Chavers, 468 F.3d at 1275 ("[T]he entry of judgment, and not the issuance of the mandate, is the event that starts the running of time for seeking Supreme Court review.").  Thus, accounting for the additional 90 days during which Petitioner could have, but did not, file a writ of certiorari, Petitioner's one-year clock started running on July 9, 2007.

The State recognizes that Petitioner filed his first state-court post-conviction motion on November 18, 2007, 131 days after his conviction became final for purposes of AEDPA's one-year period.  The State claims, however, that the Fifth District Court of Appeal denied this motion on November 7, 2008, another date that does not appear in the record.  (Compare State's Response (Docket No. 10) at 10 (stating that court denied postconviction motion on November 7, 2008) with State's Response at 7 (stating that court denied postconviction motion on January 7, 2008).)  Rather, the appellate court ruled on Petitioner's first post-conviction motion on January 7, 2008.  (Id. at 7.)  Petitioner claims that he filed his second state post-conviction motion on March 13, 2008; the State contends that this second motion was not filed until July 22, 2008.  The Court does not have access to the state-court docket, and will give Petitioner the benefit of the

5

doubt on this issue.  Under Petitioner's view of the record, another 64 days elapsed from the one-year limitations period.   Petitioner's appeal of the denial of this second postconviction motion became final with the Florida Supreme Court's denial of discretionary review on September 18, 2009.  This Petition was filed on December 21, 2009, 93 days later.   The total time elapsed for purposes of the AEDPA statute of limitations is therefore 352 days, and the Petition is timely.

## C.    Merits

### 1.    Claim 1:  Judgment of Acquittal

Petitioner's first ground for relief is that both his trial counsel and his appellate counsel were ineffective with respect to seeking a judgment of acquittal and appealing the trial court's denial of Petitioner's Motion.  The State argues that this ground is based on state law, but the State misconstrues the nature of this claim.  The claim is not a claim that the trial court erred, which would necessarily be a state-law claim that is not cognizable on federal habeas review.  Rather, the claim is one of ineffective assistance of counsel under the Sixth Amendment, something that is appropriate for federal habeas review.  To establish a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth amendment.
>
> Second, the defendant must show that the deficient performance prejudiced the defense.  This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is not reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).

The Petition sets forth no facts regarding what trial counsel did or did not do before moving for a judgment of acquittal. There is therefore no indication that trial counsel's performance was in any way deficient. Because trial counsel was not ineffective, appellate counsel was likewise not ineffective for failing to argue that trial counsel was ineffective. The evidence regarding Petitioner's guilt was substantial, if not overwhelming. Counsel's failure to secure a judgment of acquittal under these circumstances is not ineffective assistance.

### 2.    Claims 2, 8, and 9:  Jury Instruction

In ground two, the Petition contends that the trial court erred by giving an inaccurate and incomplete jury instruction. Ground eight claims that Petitioner's trial counsel was ineffective for failing to object to the inaccurate and incomplete jury instruction, and ground nine contends that trial counsel was ineffective for failing to preserve the faulty jury instruction for appellate review.

Petitioner apparently contends that the trial court failed to give Florida's standard jury instruction 3.12(a), which is used for a single defendant accused in multiple counts or multiple informations. The standard instruction provides:

> A separate crime is charged in each count of the information and, although they have been tried together, each crime and the evidence applicable to it must be considered separately and a separate verdict returned as to each. A finding of guilty or not guilty as to one crime must not affect your verdict as to the other crime(s) charged.

Fla. Standard Crim. Instr. 3.12(a). There is no dispute that the trial court did not give the standard instruction. Rather, the trial court instructed the jury that Petitioner had been

charged with three separate crimes, that there were three separate verdict forms, and that only one verdict could be returned as to each crime charged. (App. K at 210.)

The instructions the trial court gave, if not a verbatim recitation of Florida's standard instruction, were a close approximation of that instruction. Petitioner has failed to establish that the trial court's chosen instructions somehow violated the United States Constitution, or that his trial or appellate counsel was deficient with regard to the allegedly inaccurate jury instruction.

### 3. Claim 3: <u>Nelson</u> Hearing

More than three years before his trial, and only 20 days after the appointment of the attorney who would serve as trial counsel, Petitioner filed a motion seeking to discharge his attorney. Petitioner argued that he was not confident in the attorney and that he felt that the attorney "was not trustworthy in this case." (App. F (State's Response to Order to Show Cause) at 2.) There is no indication in the record that the trial court held a hearing on this claim, as ostensibly required by <u>Nelson v. State</u>, 274 So. 2d 256 (Fla. Dist. Ct. App. 1973). Petitioner argues here that his appellate counsel was ineffective for failing to raise on appeal whether the trial court erred in not conducting a <u>Nelson</u> hearing.

"'[G]eneral allegations of dissatisfaction' are insufficient to trigger the need for a full <u>Nelson</u> hearing." <u>Finfrock v. State</u>, 84 So. 3d 431, 433 (Fla. Dist. Ct. App. 2012) (quoting <u>Penn v. State</u>, 51 So. 3d 622, 623 (Fla. Dist. Ct. App. 2011)). A court must conduct a <u>Nelson</u> hearing "where the defendant has clearly alleged attorney

incompetence and has unequivocally expressed his desire to discharge his counsel." Id. at 434.

Petitioner's early motion regarding his counsel is nothing more that "general allegations of dissatisfaction" that were clearly not sufficient to require a Nelson hearing. Petitioner made the motion when counsel had represented him for fewer than 3 weeks, and apparently never expressed any other dissatisfaction with his counsel's performance during the intervening 3 years of the representation. The trial court was not obligated to conduct a Nelson hearing, and thus it would have been futile for appellate counsel to raise this ground on appeal. Appellate counsel was therefore not ineffective.

**4.      Claim 4:  Petitioner's Right to Testify**

Next, Petitioner alleges that his trial counsel was ineffective for misadvising him about his right to testify. The trial court conducted an evidentiary hearing on this claim in conjunction with Petitioner's first postconviction motion.

In its order setting the evidentiary hearing, the trial court noted that the court had questioned Petitioner as to whether he would testify, and specifically as to what counsel had told Petitioner regarding his right to testify. At the evidentiary hearing, trial counsel testified in detail about his conversations with Petitioner regarding the decision whether to testify. Specifically, counsel advised Petitioner about the possibility of impeachment, and rehearsed question and answer scenarios with Petitioner. (App. L at 9-12.) Trial counsel also testified that he told Petitioner that it was ultimately his decision whether or not to testify. (Id. at 7.) The trial court concluded after the evidentiary hearing that

Petitioner was adequately advised of his right to testify and properly informed of the possible consequences of exercising that right. (App. K at 198.)

Petitioner has failed to establish that his counsel rendered ineffective assistance. Counsel did not misadvise Petitioner. It was Petitioner's own decision whether to testify, and he cannot now blame his counsel for that decision. Petitioner has failed to demonstrate that he was denied effective assistance of counsel and is entitled no relief on this claim.

### 5.    Claim 5:  Failure to Object to Juror Misconduct

During voir dire, the jurors were asked whether they knew anyone who had been a victim of a violent crime. Despite answering "no" to this question, one of the jurors announced during trial testimony that her cousin had been shot to death in front of her when she was a child. The juror was subsequently excused from the jury and replaced with an alternate. Petitioner claims that his trial counsel was ineffective for failing to move for a mistrial.

The trial court involved both Petitioner and his trial counsel in the decision regarding whether to excuse the juror and the ramifications of excusing the juror. Petitioner agreed on the record with the decision to excuse the juror and proceed with the trial. Moreover, the trial court ensured that the remaining jurors had not been prejudiced by the excused juror. It was quite proper for trial counsel not to move for a mistrial in this situation, and Petitioner cannot show ineffective assistance on this ground.

**6.     Claim 6:  Witness Tampering**

Petitioner also alleges ineffective assistance of counsel because trial counsel did not introduce evidence of alleged witness tampering.  During the trial, one of Petitioner's co-defendants, ElShawn Joshua, testified for the prosecution.  As he testified, two men entered the courtroom and then left without incident.  Joshua testified that the two men were his cousins and had previously tried to intimidate him.  After the two men exited the courtroom, Mr. Joshua indicated that he wanted to conclude his testimony.  Trial counsel did not object.

As the trial court found, Petitioner makes no allegation that Mr. Joshua changed his testimony as a result of any alleged intimidation.  Nor does Petitioner explain how bringing this attempted intimidation to the attention of the jury would have altered the outcome of his case.  Petitioner has not established that trial counsel's failure to object was ineffective representation or that he was prejudiced thereby.  Petitioner is not entitled to relief on this ground.

**7.     Claim 7:  Failure to Object to Prosecutorial Misconduct**

This allegation involves the incident during Elshawn Joshua's testimony that Petitioner referenced in claim three.  However, the record does not reflect anything even remotely approaching prosecutorial misconduct during this incident.  Petitioner has failed to establish trial counsel fell short in his representation according to the criteria set forth by Strickland.  Petitioner is not entitled to relief on this claim.

### 8.     Claim 10: Failure to Call Alibi Witnes

Petitioner's final ineffective-assistance claim alleges that his trial counsel was ineffective for not presenting the testimony of Sylvester Morman, an alleged alibi witness.  The trial court conducted an evidentiary hearing on this claim.  At the hearing, Petitioner testified that he told his counsel's investigator about the witness but did not ever tell counsel about the witness.  (App. L at 33.)  Trial counsel testified similarly, that that he and Petitioner had never discussed the possibility of Mr. Morman testifying.  (Id. at 19.)  Even if trial counsel knew of the existence of Mr. Morman, however, counsel testified that Petitioner admitted to counsel that he was involved in the crime.  (Id. at 19-24.)  Thus, trial counsel knew that an alibi witness on behalf of Petitioner would offer perjured testimony.  (Id. at 30.)

Petitioner has failed to establish either prong of the Strickland test and is not entitled to relief on this claim.

### 9.     Claim 11: Failure to Appoint Counsel for Evidentiary Hearing

Petitioner first argues that he did not understand how to present his claims at the evidentiary hearing on his postconviction motion and that therefore he could not adequately present, nor could the trial court properly hear, his claims.  The Florida Supreme Court has established a four-factor test for determining when to appoint counsel.  Graham v. State, 372 So. 2d 1363 (Fla. 1979).  A trial court must consider "[t]he adversary nature of the proceeding, its complexity, the need for an evidentiary hearing, or the need for substantial legal research [as] important elements which may require the appointment of counsel."  Id. at 1366.  The trial court's decision whether to

appoint counsel for an evidentiary hearing in a postconviction proceeding is reviewed for abuse of discretion.

The proceeding in question was not adversarial or complex in nature and therefore did not warrant the appointment of counsel.  Trial counsel was the only witness who testified, and the two matters addressed in the evidentiary hearing were not complicated and did not require substantial legal research.  The trial court did not err in expecting Petitioner to navigate the evidentiary hearing without the help of counsel.  Petitioner has failed to show that the trial court abused its discretion by not appointing counsel for the evidentiary hearing.  Petitioner is not entitled to relief on this claim.

**D.      Certificate of Appealability**

Petitioner is required to secure a Certificate of Appealability prior to appealing the dismissal of his habeas corpus action.   28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  This Court cannot grant a Certificate of Appealability unless the prisoner "has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  Petitioner must establish that the resolution of his constitutional claims "was debatable among jurists of reason."  Lott v. Att'y Gen., Fla., 594 F.3d 1296, 1301 (11th Cir. 2010).

None of Petitioner's claims merit further consideration.  Thus, a certificate of appealability will not issue.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1.      The Petition for Writ of Habeas Corpus (Docket No. 1) is **DENIED**; and

2.      A certificate of appealability will not issue.

 **The Clerk shall enter judgment accordingly, terminate all remaining deadlines as moot, and close the file.**

Dated: <u>August 23, 2012</u>

<u>*s/ Paul A. Magnuson*</u>
Paul A. Magnuson
United States District Court Judge